423 S.E.2d 856

**E.L. KIRKPATRICK, Jr., et al., and United Steelworkers of America, AFL–CIO–CLC, Plaintiffs Below, Appellants,**

v.

**The MID–OHIO VALLEY TRANSIT AUTHORITY, Defendant Below, Appellee.**

**No. 20916.**

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided June 29, 1992.

Dissenting Opinion of Chief Justice McHugh Dec. 17, 1992.

Carl E. Hostler, Michael F. Niggemyer, Hostler & Segal, Charleston, for appellants.

David Goldman, Pittsburgh, for appellant United Steelworkers of America.

Fred S. Holroyd, Holroyd & Yost, Charleston, for appellee.

WORKMAN, Justice:

This case is before the Court upon the appeal of E.L. Kirkpatrick, Jr., and similarly interested individual employees for the Mid–Ohio Valley Transit Authority (hereinafter referred to as MOVTA) and the United Steelworkers of America, AFL–CIO–CLC (hereinafter referred to as the Steelworkers) pursuant to a July 1, 1991, final order of the Circuit Court of Wood County which denied the appellants' petition for declaratory judgment. The appellants' contend that 1) the lower court erred in failing to rule that West Virginia Code § 8–27–1 to –27 (1991), known as the West Virginia Urban Mass Transportation Authority Act, and specifically West Virginia Code § 8–27–21 provides a statutory requirement for collective bargaining rights on behalf of

the non-supervisory drivers and mechanics employed by the appellee, MOVTA, or in the alternative, 2) the lower court erred in failing to find that the non-supervisory drivers and mechanics employed by the appellee are entitled to collective bargaining rights based upon the West Virginia Urban Mass Transportation Authority Act and consistent with the equal protection clauses of the Constitutions of the United States and West Virginia.[1] Based upon a review of the record, the arguments of the parties and all other matters submitted before this Court, we find no error was committed by the circuit court and accordingly affirm.

The facts of this case are not disputed by the parties involved. In June 1990, the appellants, employees of the MOVTA began attempting to unionize the non-supervisory drivers and mechanics of the MOVTA. A majority of the MOVTA non-supervisory drivers and mechanics have signed authorization cards requesting that the Steelworkers represent them in collective bargaining matters. There has never been a collective bargaining agreement in effect between the appellee and any labor organization.

On July 8, 1990, the Steelworkers requested that the MOVTA grant it the exclusive right to represent the non-supervisory drivers and mechanics in matters of collective bargaining. The MOVTA, however, has refused to recognize the union as the employees' representative.

Consequently, on August 24, 1990, the appellants filed an action in the Circuit Court of Wood County seeking a declaration of their collective bargaining rights. The circuit court's denial of the appellants' petition for declaratory judgment is the basis of the present appeal.

The main issue before this Court is whether West Virginia Code § 8–27–21 affords the appellants the right to unionize and enter into a collective bargaining agreement. The appellants maintain that West Virginia Code § 8–27–21 provides

them with collective bargaining rights. The appellee, however, asserts that a union cannot be forced upon a public employer absent a statutory requirement. Further, the appellee contends that West Virginia Code § 8–27–21 only applies to existing public systems which fall under the West Virginia Urban Mass Transportation Authority Act that also have an existing collective bargaining agreement or rights.

In order to resolve this issue, it is necessary to examine the relevant statutory provisions. West Virginia Code § 8–27–4 mandates that when an urban mass transportation authority such as the MOVTA is created, it "shall constitute a public corporation...." Moreover, West Virginia Code § 8–27–21 provides, in pertinent part, that

[w]henever any authority acquires any existing system pursuant to the provisions of this article, the employees of such system shall be protected in the following manner:

....

(c) The rights, privileges and benefits of the employees under existing collective bargaining agreements shall not be affected and the owning authority shall assume the duties and obligations of the acquired system under any such agreement;

(d) Collective bargaining rights shall be continued with respect to employees of any acquired system; ....

This Court has previously held that a union cannot force itself upon a public employer absent a statutory requirement mandating that the public employer recognize the union. *See City of Fairmont v. Retail, Wholesale, and Department Store Union, AFL–CIO*, 166 W.Va. 1, 283 S.E.2d 589 (1980). Specifically, in syllabus point 2 of *City of Fairmont* we stated that "it is clear that a public employer is not required to recognize or bargain with a public employee association or union in the absence of a statutory requirement." *Id.* at 1, 283 S.E.2d at 589.

It is evident from West Virginia Code § 8–27–4 that the MOVTA is a public

---

**1.** Based upon our conclusion that West Virginia Code § 8–27–21 does not provide the appellants with collective bargaining rights, we find the appellants' equal protection claim which is based upon that statute to be unmeritorious.

*See Frasher v. West Virginia Bd. of Law Examiners*, 185 W.Va. 725, 408 S.E.2d 675 (1991); *Israel ex rel. Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

employer and therefore, not required to recognize the appellants' union unless there is some statutory requirement to do so. Thus, the only question which remains is whether West Virginia Code § 8–27–21 provides that statutory requirement.[2]

■ It is clear that West Virginia Code § 8–27–21 applies when the following conditions are met: 1) an existing system is acquired by an authority, and 2) the existing system had *previously* entered into a collective bargaining agreement. Simply stated, West Virginia Code § 8–27–21 does not provide employees of a mass transit authority with protection of collective bargaining rights if the collective bargaining rights were not in place at the time the mass transit authority became responsible for the operation of the mass transit system.

In the present case, there was no acquisition of an existing system, there was no established union and there were no collective bargaining rights in place. Consequently, we find that no error was committed by the lower court.

Based on the foregoing opinion, the decision of the Circuit Court of Wood County is hereby affirmed.

Affirmed.

McHUGH, Chief Justice, dissenting:

(Filed Dec. 17, 1992)

The majority of the Court has chosen to ignore the plain language of *W. Va. Code,* 8–27–21 [1969] in its conclusion. It has concluded that *W. Va. Code,* 8–27–21 applies only when the following conditions are met: (1) an existing system is acquired by an authority, and (2) the existing system had previously entered into a collective bargaining agreement.

In a strained interpretation, the majority focuses on the word "existing." However, a review of *W. Va. Code,* 8–27–21 is necessary to show how the majority has ignored pertinent language of that statute:

> Whenever any authority acquires any *existing* system pursuant to the provisions of this article, the *employees* of such system *shall be protected* in the following manner:
>
> . . . .
>
> (c) The rights, privileges and benefits of the employees under *existing* collective bargaining agreements shall not be affected and the owning authority shall assume the duties and obligations of the acquired system under any such agreement;
>
> (d) Collective bargaining rights shall be continued with respect to employees of any acquired system;
>
> (e) The rights, privileges and benefits of the employees under any *existing* pension or retirement plan or plans shall not be affected and the owning authority shall assume the duties and obligations of the acquired system under any such plan or plans[.]

(emphasis added).

In order for the majority to reach its result, it has added the word "existing" before the words "collective bargaining rights" in subsection (d), a word the legislature omitted. There is absolutely no requirement in this statute that an existing system previously had a collective bargaining *agreement* in order to secure rights for the present employees.

---

**2.** The appellants also maintain that the National Labor Relations Act and West Virginia Code § 21–1A–1 to –8 (1989) (entitled the Labor–Management Relations Act for the Private Sector) prospectively guarantees collective bargaining rights to employees of any acquired system even though the employees have not previously chosen to exercise their rights by means of forming a unit and entering into a collective bargaining agreement with their prior employer. The lower court found that West Virginia Code § 21–1A–1 to –8 was intended by the legislature "to apply to the private sector not to the public

sector of which the 'MOVTA' is most assuredly a member." Moreover, West Viginia Code § 21–1A–2(a)(2) specifically excludes "the State of West Virginia or any political subdivision or agency thereof." *See City of Fairmont,* 166 W.Va. at 15, 283 S.E.2d at 597 ("There is no question that W.Va.Code, 21–1A–1 *et seq.,* is limited to private sector labor disputes.") We agree with the lower court's decision concerning the applicability of the statute and accordingly find that the appellants' argument is without merit.

This statute is remedial, and therefore, to be construed as such—to protect the employees. *W. Va. Code*, 8–27–2(e) [1969] clearly reflects a legislative intent that this statute must be "liberally construed."[1]

In *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979), this Court said:

> It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning.... When intent of the Legislature clearly appears from a reading of the statute, it is unnecessary for a reviewing court to attempt construction. We believe that [where a] statute plainly expresses a legislative intent ... it is unnecessary to search for a meaning beyond the plain words. In this instance there is nothing to construe. This is a rule of statutory construction so well established and often cited that we find it unproductive to cite authority here.

Obviously, the legislature intended to omit the word "existing" in subsection (d) for a reason. That reason was to protect employees, whether or not a collective bargaining *agreement* was in place at the time the mass transit authority became responsible for the operation of the mass transit system. Moreover, it defies logic that the legislature would have enacted subsection (d), which guarantees collective bargaining *rights* upon acquisition of a system, *in addition to* subsection (c), which protects employees' rights under *an already-existing* agreement. The opinion of the majority, in essence, holds that subsections (c) and (d) provide the exact same protections when, in fact, they obviously do not.

If, however, there is a need to construe the statute, as shown above, the legislature has clearly said the statute should be "liberally construed."

Instead, the majority in this case has unnecessarily deprived the "existing" employees of a valuable protection guaranteed by the statute—collective bargaining rights.

Accordingly, I must dissent.

---

1. *W. Va. Code*, 8–27–2(e) provides: "This article ... shall be liberally construed[.]"