# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Erica Louise Barrett, Jerry T. Morgan,**
**and Gloria J. Morgan,**
**Defendants Below, Petitioners**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0047** (Harrison County 12-C-336-1)

**Angela R. Retton, David G. Retton,**
**Maggie J. Retton, a minor,**
**David L. Retton, a minor,**
**And Trent J. Retton, a minor,**
**Plaintiffs Below, Respondents**

## MEMORANDUM DECISION

Petitioners Erica Louise Barrett, Jerry T. Morgan, and Gloria J. Morgan, by counsel G. Thomas Smith and D. Andrew McMunn, appeal the judgment of the Circuit Court of Harrison County, entered October 15, 2013, favoring respondents in the total amount of $1,013,156, subsequent to a jury trial. Respondents Angela R. Retton, David G. Retton, Maggie J. Retton, David L. Retton, and Trent J. Retton, appear by counsel David J. Romano and Jennifer L. Finch.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Erica Barrett, while driving a car owned by Petitioners Gloria and Jerry Morgan, struck the rear end of a stopped car driven by Respondent Angela Retton in August of 2010. Respondent was treated on the day of the accident at an urgent care facility and thereafter underwent treatment with various providers for chronic pain related to disc herniations and disc bulges. Respondent continued to work during this time. Respondent—first on her own and then with assistance of counsel—unsuccessfully negotiated with petitioner's motor vehicle insurer, State Farm Insurance Company ("State Farm"). Respondent, together with her husband and children, filed a civil complaint against petitioners in August of 2012. The case ultimately was tried before a jury. At the conclusion of the evidence, the jury returned a verdict in favor of respondents in the amount of $1,013,156, including $320,500 for future medical expenses. Petitioners filed a Motion for a New Trial or, in the Alternative, to Alter or Amend the Judgment to Reduce the Future Medical Damages. The motion was denied, and this appeal followed.

1

Petitioners assert five assignments of error: first, that the circuit court erred by allowing respondents to introduce evidence of payments made by State Farm to petitioners' expert witnesses; second, that the circuit court erred by allowing respondents to introduce evidence of future special damages that had not been timely disclosed; third, that the circuit court erred in prohibiting petitioners' expert witness, Dr. Sandra Metzler, from rendering an opinion on causation; fourth, that the circuit court erred in refusing to give a "missing witness" instruction; and, fifth, that the circuit court erred in denying petitioners' request for remittitur. We consider these assignments of error under the umbrella of our standard of review with regard to a circuit court's order denying a motion for new trial:

> "[T]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln–Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008). *See also Neely v. Belk Inc.*, 222 W. Va. 560, 566, 668 S.E.2d 189, 195 (2008) (stating that "a new trial should rarely be granted and then granted only where it is "'reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.'" *In re State Public Building Asbestos Litigation*, 193 W.Va. [119,] 124, 454 S.E.2d [413,] 418 [(1994)] (quoting 11 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2803 at 32–33).").

We begin with the first assignment of error that the circuit court erred by allowing respondents to introduce evidence of payments made by State Farm to petitioners' expert witnesses as fees for the witnesses' participation in various litigation matters. In their argument, petitioners address the circuit court's having allowed cross-examination concerning the affiliation of petitioners' witness Dr. Sandra Metzler (a biomechanical engineer) with a company that had received more than $6 million from State Farm over about a five-year period, and the affiliation of witness Dr. Kent P. Thrush (an orthopedic surgeon) with a practice that had received more than $1 million for expert consultation over about a five-year period.[1] Petitioners lodged a continuing objection to any reference to insurance. We have said, "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 11, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). Petitioners argue that the court's allowing any reference to State Farm at trial violates Rule 411 of the West Virginia Rules of Evidence, which provides:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when

---

[1] We note that in the pages of the trial transcript cited by petitioners, the reference to Dr. Thrush's connection with State Farm was fleeting and minimal, and referenced a specific bill that was paid directly by State Farm.

2

offered for another purpose, such as proof of agency, ownership, or control, if controverted, or bias or prejudice of a witness.

Under the limited facts supported by the appendix record on appeal, we find that the circuit court appropriately considered this evidence under the directive of Syllabus Point 2, *Reed v. Wimmer*, 195 W.Va. 199, 465 S.E.2d 199 (1995):

> An insured is presumed to be protected from undue prejudice from the admission of evidence of insurance at trial if the following requirements are met: (1) the evidence of insurance was offered for a specific purpose other than to prove negligence or wrongful conduct; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court delivered a limiting instruction advising the jury of the specific purpose(s) for which the evidence may be used.

Upon consideration of this standard, we find that the circuit court did not abuse its discretion, as any information about the relationships between each expert witness and State Farm Auto or its affiliates was offered for the purpose of showing witness bias, a purpose expressly authorized by Rule 411. Furthermore, that evidence was relevant to determinations about the credibility of those witnesses, and the court conducted the appropriate balancing test. The references to insurance throughout the case were sufficiently restricted to the purpose of evaluating bias, and the circuit court gave limiting instructions at the relevant junctures, directing that any mention of insurance "was introduced for the sole and only purpose to inform the jury of how this witness may have been paid, so that the jury can consider it in evaluating [the witness's] credibility and believability." The circuit court did not err.

We turn, then, to petitioners' second assignment of error that the circuit court erred by allowing respondents to introduce evidence of future special damages that had not been timely disclosed, recognizing that:

> [a] trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996). Respondents served their disclosure of expert witnesses pursuant to Rule 26(b)(4) of the West Virginia Rules of Civil Procedure on April 30, 2013, and the matter was not tried until October of that same year. Respondents' prior discovery responses show that respondents were forthcoming about the expectation that Respondent Retton would incur future medical treatment for the remainder of her life. As the circuit court aptly explained in its order denying the motion for a new trial, petitioners "did not seek any relief from the [c]ourt based on allegedly inadequate

discovery responses [or] inadequate disclosure of expected expert testimony, and neither did [petitioners] depose a single treating physician of [Respondent Retton], or otherwise seek any further discovery on this issue." In light of these circumstances, we find that petitioners were not unfairly surprised, and the circuit court did not abuse its discretion in allowing evidence of future medical damages.

Next, we address petitioners' third assignment of error that the circuit court erred in prohibiting petitioners' expert witness, Dr. Sandra Metzler, from rendering an opinion on causation pursuant to a review for an abuse of discretion. "'The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong.' Syllabus Point 6, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991)." Syl. Pt. 1, *West Virginia Div. of Highways v. Butler*, 205 W.Va. 146, 516 S.E.2d 769 (1999). *See also* Syl. Pt. 2, *Morris v. Boppana*, 182 W.Va. 248, 387 S.E.2d 302 (1989) ("'Under W. Va. R. Evid. 702, a trial judge has broad discretion to decide whether expert testimony should be admitted, and where the evidence is unnecessary, cumulative, confusing or misleading the trial judge may properly refuse to admit it.' Syllabus point 4, *Rozas v. Rozas*, 176 W.Va. 235, 342 S.E.2d 201 (1986)."). We agree with the circuit court that the testimony petitioners sought to elicit from Dr. Metzler—that petitioner could not have suffered permanent injuries as a result of the subject automobile collision—was unnecessarily cumulative in light of the testimony of petitioners' other expert witness, orthopedic surgeon Dr. Kent Thrush. We find no abuse of discretion in the exclusion of this evidence.

With respect to petitioners' fourth assignment of error that the circuit court erred in refusing to give a "missing witness" instruction, we note that denial of a request for a missing witness instruction is within the trial court's discretion. *Page v. Columbia Natural Resources, Inc.*, 198 W.Va. 378, 393, 480 S.E.2d 817, 833 (1996) (citing 1 Cleckley, *Handbook on Evidence*, § 3–1(C)(j) at 164 (1994) ("the rule is discretionary and subject to an abuse of discretion standard"). Furthermore, the instruction is required only where there is an unjustified failure to call a material witness. *Id. citing McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 363 S.E.2d 736 (1987). Here, petitioners argue that respondents "chose not to call any . . . specialists [who treated respondent] to testify at trial but instead depended on the testimony provided by John Manchin, D.O., [respondent's] primary care physician." Petitioners speculate that the testimony of these witnesses would have been adverse to respondents' case. We agree with respondents that there is no evidence that these witnesses were "missing[,]" because they were equally available to both parties for deposition or trial testimony. *See* Syl. pt. 2, in part, *Tracy v. Cottrell*, 206 W.Va. 363, 524 S.E.2d 879 (1999). We find no error with respect to the circuit court's declining the requested instruction.

Finally, we address the fifth assignment of error that the circuit court erred in denying petitioners' request for remittitur, in which petitioners take exception to the award of $320,500.00 for future medical expenses though, they argue, the trial testimony of Dr. Manchin supports only $202,860.00 in such damages.[2] We have written:

---

[2] Remittitur is the method by which a court reduces an award. We have explained:

"Where an injury is of such a character as to be obvious, the effects of which are reasonably common knowledge, it is competent to prove future damages either by lay testimony from the injured party or others who have viewed his injuries, or by expert testimony, or from both lay and expert testimony, so long as the proof adduced thereby is to a degree of reasonable certainty. . . ." Syl. Pt. 11, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974).

Syl. Pt. 6, *Cook v. Cook*, 216 W.Va. 353, 607 S.E.2d 459 (2004). Dr. Manchin testified that the average annual cost of respondent's treatment for the three years preceding trial was $5,880, and it was likely that respondent would require more treatment in future years than she had required to that point. Dr. Manchin testified that respondent's condition was incurable, and that she would require treatment for the remainder of her life. In addition, Respondent Angela Retton and Respondent David Retton each testified that Respondent Angela Retton would have sought more treatment than she did, but their financial resources were limited, consequently limiting the amount of treatment sought. Inasmuch as Dr. Manchin testified about the effects of respondent's injuries to a reasonable degree of medical certainty, and it is uncontroverted that petitioner would

---

[t]he historic rationale for remittitur practice is that it saves the time and expense of a new trial if the plaintiff will accept a lesser sum as a verdict. The plaintiff is satisfied because the expense of a new trial is avoided, and the defendant is satisfied because he or she either obtains a new trial, or has had the verdict against him or her reduced. Thus this procedure generally has the effect of facilitating settlement, thereby enhancing judicial economy.

*Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 127 N.M. 1, 6, 976 P.2d 1, 6 (1998). It is generally understood that, when a court grants a remittitur, the plaintiff is given the option of either accepting the reduction in the verdict or electing a new trial. *See Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974) (remanding case with directions to the trial court to give plaintiff a period of thirty days to decide whether he will accept remittitur or submit to a new trial). *See generally* 1 Linda L. Schlueter, Punitive Damages § 6.2A, at 366 (5th ed. 2005) ("If remittitur is ordered, the plaintiff has the option of either accepting the reduced award or seeking a new trial on the issue. The trial court should not simply order remittitur but must get plaintiff's consent or order a new trial." (footnotes omitted)).

*Perrine v. E.I. du Pont de Nemours and Co.*, 225 W.Va. 482, 560, 694 S.E.2d 815, 893 (2010). Respondents argue that the request for remittitur is gamesmanship aimed at correcting petitioners' failure to move for a directed verdict at the close of the evidence pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. Petitioners respond that they could not have foreseen the need to move for a directed verdict on this issue because, inasmuch as there was no basis for the award of future medical damages, they could not have known the amount of damages that would be awarded.

require greater care (at a greater expense) than she had in the past, we find no error in the circuit court's denial of the request for remittitur.

Having reviewed each of petitioners' asserted errors under the standards prescribed, and finding no error, we find no indication that the trial court acted under any misapprehension of the law or the evidence in denying petitioners' motion for a new trial. We accordingly give the order of the circuit court the respect and weight demanded by our precedent. For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISSENTING:**

Justice Brent D. Benjamin

**DISSENTING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II

LOUGHRY, Justice, dissenting:

I dissent to the majority's refusal to place this case on the argument docket and the resultant cursory affirmance of this case in a memorandum decision. The jury in this case awarded more than one million dollars for injuries sustained in a rear-end, fender-bender accident. If those amounts themselves are insufficient to raise a wary eyebrow, certainly the significant issues of law raised in the petitioners' assignments of error warrant this Court's most scrutinizing review.

In this case, the trial court permitted the repeated mention of insurance, permitted the introduction of sizeable future medical specials disclosed only a month before trial, prohibited a qualified biomechanical engineer from testifying consistent with her expertise, and refused to give a critical instruction. The issues raised in this case are ones that touch upon the daily practice of thousands of personal injury and defense practitioners. In fact, this case engendered amicus curiae briefs from both the Defense Trial Counsel of West Virginia and the West Virginia Association for Justice. Clearly, contrary to the majority's summary conclusion that this case presents "no substantial question of law," "prejudicial error," or "other just cause," the

associations representing the State's practitioners believe this case presents issues of great importance. *See* W.V.R.A.P. 21. I agree and am concerned for the precedential effect the majority's superficial treatment of the complex and substantial issues of law presented herein will create.

Accordingly, I dissent and caution practitioners and the lower courts to be mindful of the manner in which this case was affirmed.